ALEXANDER B. CVITAN (SBN 81746),
(Email: alc@rac-law.com)
MARSHA M. HAMASAKI (SBN 102720), and
(Email: marshah@rac-law.com)
PETER A. HUTCHINSON (SBN 225399) of
(Email: peterh@rac-law.com)
REICH, ADELL & CVITAN, A Professional Law Corporation
3550 Wilshire Boulevard, Suite 2000
Los Angeles, California  90010-2421
Telephone:  (213) 386-3860; Facsimile:  (213) 386-5583

Attorneys for Plaintiff Construction Laborers Trust Funds
For Southern California Administrative Company, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> THROOP LIGHTWEIGHT FILL, INC. a California corporation;  GEORGE L. THROOP CO., a California corporation; <br><br> Defendants. | CASE NO. <br><br> COMPLAINT FOR: <br><br> 1. MONETARY DAMAGES DUE TO EMPLOYEE BENEFIT PLANS; <br><br> 2. SPECIFIC PERFORMANCE OF OBLIGATION TO PRODUCE RECORDS FOR AUDIT; <br><br> 29 U.S.C. §§ 1132(g)(2) and 1145; 29 U.S.C. § 1132(a)(3); 29 U.S.C. § 185 |

Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1. This action is brought by a fiduciary administrator on behalf of employee benefit plans against employers in accordance with the terms and conditions of the plans, collective bargaining agreements to which the employers are bound and applicable statutes to: (a) recover unpaid monthly employee fringe benefit contributions

-1-

and related damages due to the plans by the employers (Claim 1); (b) compel the employers to comply with an audit of their records in accordance with the Agreements and 29 U.S.C. §§ 1059 and 1145 (Claim 2). This Court has jurisdiction pursuant to: sections 502(g)(2) and 515 of the Employee Retirement Income Security Act (ERISA) (codified at 29 U.S.C. §§ 1132(g)(2) and 1145); section 502(a)(3) of ERISA (codified at 29 U.S.C. § 1132(a)(3)); and section 301 of the Labor Management Relations Act (LMRA) (codified at 29 U.S.C. § 185). Pursuant to section 502(e)(2) of ERISA (codified at 29 U.S.C. § 1132(e)(2)), venue is proper in this district for each of the following reasons: the plans are administered in this district; the employers performance and breach took place in this district; and the employers reside or may be found in this district.

## PARTIES

2. Plaintiff CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY ("Plaintiff" and/or "CLTF") is a Delaware limited liability company, with its principal place of business in this District. CLTF is the administrator and agent for collection of several employee benefit plans, and a fiduciary as to those plans, including the Laborers Health and Welfare Trust Fund for Southern California; Construction Laborers Pension Trust for Southern California; Construction Laborers Vacation Trust for Southern California; Laborers Training and Re-Training Trust Fund for Southern California; Fund for Construction Industry Advancement; Center for Contract Compliance; Laborers Contract Administration Trust Fund for Southern California; Laborers' Trusts Administrative Trust Fund for Southern California; and Southern California Partnership for Jobs Trust Fund (collectively "TRUST FUNDS"). Each are express trusts and were created by written agreements and are employee benefit plans within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3) and multi-employer plans within the meaning of ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A). The TRUST FUNDS are jointly-

436837.1

managed trusts in accordance with LMRA § 302(c)(5), 29 U.S.C. § 186(c)(5), created pursuant to collective bargaining agreements between the Southern California District Council of Laborers and its Affiliated Locals, ("UNION") and various employers. The TRUST FUNDS are administered in the County of Los Angeles, State of California. Plaintiff brings this action as a fiduciary on behalf of the TRUST FUNDS.

3. CLTF is a fiduciary as to the TRUST FUNDS, in that it:

A. Exercises discretionary authority or discretionary control respecting the collection of delinquent (or possibly delinquent) contributions to the TRUST FUNDS, including but not limited to discretion in auditing employers, deciding what claims to assert, acting as agent of the TRUST FUNDS in asserting claims, waiving liquidated damages, settling claims, and releasing claims; and

B. Exercises authority or control respecting management or disposition of assets of the TRUST FUNDS, including but not limited to, receiving delinquent contributions collected and holding them in a bank account in its own name over which it has check-writing authority, and then exercising discretion in allocating those assets among the different TRUST FUNDS, different participants, different time periods and different jobs.

4. Plaintiff is informed and believes and thereon alleges that Defendant, THROOP LIGHTWEIGHT FILL, INC. ("EMPLOYER"), is a corporation organized and existing under and by virtue of the laws of the State of California and is and/or was engaged in business in the State of California with its principal place of business in the City of Pasadena, County of Los Angeles, State of California and does, or at all relevant times did, business in the State of California as a construction contractor in an industry affecting interstate commerce.

5. Plaintiff is informed and believes and thereon alleges that Defendant, GEORGE L. THROOP CO. ("NON-SIGNATORY EMPLOYER"), is a corporation organized and existing under and by virtue of the laws of the State of California and is and/or was engaged in business in the State of California with its principal place of

business in the City of Pasadena, County of Los Angeles, State of California and does, or at all relevant times did, business in the State of California as a construction contractor in an industry affecting interstate commerce.

OTHERS

6. The Southern California District Council of Laborers and its affiliated Local Unions (collectively "UNION") is, and at all relevant times was, a labor organization representing employees affecting interstate commerce. The UNION is not a party to this action.

ALLEGATIONS COMMON TO ALL CLAIMS

7. EMPLOYER and NONSIGNATORY EMPLOYER are contractors, licensed by the California Contractors State License Board and engage in business in California.

8. Plaintiff is informed and believes, and on that basis alleges, that the EMPLOYER and NONSIGNATORY EMPLOYER (collectively "DEFENDANTS") share the same principals and officers who each manage and direct the activities of both DEFENDANTS.

9. Plaintiffs are informed and believe and, on that basis, allege that DEFENDANTS share the same address and operate out of the same physical location.

10. Plaintiffs are informed and believe and, on that basis, allege that each of the DEFENDANTS through their managing officers acted in all respects pertinent to this action as the agent of the each other, carried out a joint scheme, business plan or policy in all respects pertinent to this action, and the acts of each of the DEFENDANTS are legally attributable to the each other. Furthermore, DEFENDANTS in all respects acted as the employer and/or joint employer of the employees for whom DEFENDANTS failed to make contributions to the TRUST FUNDS.

11. Plaintiffs are informed and believe and, on that basis, allege, that each of the DEFENDANTS acted as the employer and/or joint employer of the employees for

whom DEFENDANTS failed to make contributions to the TRUST FUNDS in that each of the DEFENDANTS (1) exercised control over the wages, hours and working conditions of the employees; (2) suffered or permitted the employees to work; and (3) engaged the employees thereby creating an employment relationship.

12. Plaintiffs are informed and believe, and on that basis alleges, that there exists, and at all times existed, a substantial continuity of the business operations of the EMPLOYER and NON-SIGNATORY EMPLOYER where work was performed, by employees of both DEFENDANTS. Plaintiffs are further informed and believe, and on that basis allege, that in using employees of both DEFENDANTS to perform worked covered under the Agreements referenced in paragraphs 15 to 17 below, each assumed the obligations of each and both of them.

13. Plaintiffs are informed and believe, and on that basis allege, that both DEFENDANTS are common law employers which share or codetermine matters governing the essential terms and conditions of employment of employees of both of them, including but not limited to: supervision and direction of employees; wages and hours; dictating the number of workers to be supplied; controlling scheduling, seniority, and overtime; and assigning work and determining the manner and method of work performance.

## FIRST CLAIM FOR RELIEF
## CONTRIBUTIONS OWED TO THE TRUST FUNDS
## (AGAINST EMPLOYER)
## [29 U.S.C. §§ 185 and 1145]

14. Plaintiff repeats and realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 13 above.

/ / /

/ / /

## AGREEMENTS

15. At all times mentioned, EMPLOYER was and continues to be signatory to written Collective Bargaining Agreements with the UNION, having executed a Laborers Short Form Agreement for the Construction Industry ("Parking and Highway Improvement Agreement") on or about March 14, 2013 ("Improvement Agreement") as well as a Laborers Short Form Agreement for the Construction Industry with an effective date of October 9, 2015 ("Short Form Agreement") with a Side Letter re EMPLOYER'S scope of work, with the Southern California District Council of Laborers and its affiliated Local Unions ("UNION").

16. The Improvement Agreement and Short Form Agreement incorporate by reference the UNION'S existing Construction Master Labor Agreements covering any construction work by EMPLOYER covered by said Construction Master Labor Agreements.

17. EMPLOYER has been and continues to be bound by the Improvement Agreement, Short Form Agreement and Construction Master Labor Agreements (collectively "MLAs") relating to its work on projects covered by said Agreements. Pursuant to the MLAs, EMPLOYER became obligated to all the terms and conditions of the various Trust Agreements which created each of the TRUST FUNDS as they may be constituted in their original form or as they may be subsequently amended. The referenced Agreements will be collectively referred to as "AGREEMENTS".

18. Based on information and belief, including but not limited to the allegations set forth in paragraphs 7 through 13 above, Plaintiff alleges that DEFENDANTS are bound to the terms of the AGREEMENTS and are jointly and severally liable for the obligations and debts of each and all of them, including those arising from the AGREEMENTS (and specifically those related to the TRUST FUNDS), because they are joint employers.

19. The AGREEMENTS obligate EMPLOYER, including NONSIGNATORY EMPLOYER (based upon the allegation of paragraphs 7 through 13) to pay fringe

436837.1

benefit contributions at the rates set forth in the AGREEMENTS for each hour worked (or paid for) by employees performing services covered by the AGREEMENTS ("MONTHLY CONTRIBUTIONS"). The EMPLOYER is additionally required to submit reports on a monthly basis ("MONTHLY REPORTS") with these MONTHLY CONTRIBUTIONS, detailing the name, address, social security number and hours worked that month for each employee covered by the AGREEMENTS and those MONTHLY REPORTS are required to be submitted even where there are no employees to report for the reporting period. The TRUST FUNDS depend on the truth and accuracy of this information, in order to not only determine the correct amount of MONTHLY CONTRIBUTIONS due, but to fulfill their own fiduciary duties to properly credit participants towards the benefits provided by the TRUST FUNDS. Those MONTHLY CONTRIBUTIONS constitute assets of the TRUST FUNDS, pursuant to the terms of the AGREEMENTS and applicable law, from the time they are due and can be reasonably segregated from other funds. The Trustees of the TRUST FUNDS have a fiduciary duty to marshal those assets so that they may be applied for the benefit of the participants and beneficiaries in accordance with the various Trust Agreements.

20. By the AGREEMENTS and pursuant to 29 U.S.C. § 1132(g)(2)(C), EMPLOYER and NONSIGNATORY EMPLOYER (based upon the allegations of paragraphs 7 to 13) are obligated to pay to the TRUST FUNDS, as and for liquidated damages for detriment caused by the failure of DEFENDANTS to pay fringe benefit MONTHLY CONTRIBUTIONS in a timely manner, a sum equal to $25.00 or twenty percent (20%) of the unpaid MONTHLY CONTRIBUTIONS or interest on the unpaid MONTHLY CONTRIBUTIONS at rates established pursuant to the AGREEMENTS from their respective due dates, whichever is the greater amount, for each of the TRUST FUNDS to which DEFENDANTS are required to contribute.

21. By the AGREEMENTS and pursuant to 29 U.S.C. § 1132(g)(2)(B), EMPLOYER and NONSIGNATORY EMPLOYER (based upon the allegations of

436837.1

paragraphs 7 to 13) are obligated for payment of interest on delinquent MONTHLY CONTRIBUTIONS from the due date of the contribution through the payment date of the contribution, at the per annum rate of five percent (5%) over the rate set by the Federal Reserve Board at San Francisco, California, effective on the date each contribution is due. The current plan rate of interest on the MONTHLY CONTRIBUTIONS is 5.25% per annum.

22. The AGREEMENTS obligate EMPLOYER, and NONSIGNATORY EMPLOYER (based upon the allegations of paragraphs 7 to 13) and any of its subcontractors or lower-tiered subcontractors, to subcontract work covered under the Agreements to those subcontractors who are parties to Collective Bargaining Agreements with the UNION, and failure to do so will result in damages to the TRUST FUNDS and EMPLOYER will be financially obligated to the TRUST FUNDS for the damages caused therefrom, including amounts measured by the fringe benefit contributions, liquidated damages, and interest that would be owed by the subcontractor if signatory to the AGREEMENT.

23. The AGREEMENTS further provide that if EMPLOYER and NONSIGNATORY EMPLOYER (based upon the allegations of paragraphs 7 to 13) subcontracts work to and/or if its subcontractor(s) or lower-tiered subcontractors, subcontracts work covered under the AGREEMENTS to any subcontractor who is delinquent in its obligations to the TRUST FUNDS under its AGREEMENTS, then DEFENDANTS will be financially obligated to the TRUST FUNDS for the amounts owed by said delinquent subcontractor, including any fringe benefits, liquidated damages and interest owed.

24. The AGREEMENTS provide the TRUST FUNDS with specific authority to examine and copy all of EMPLOYER's and NONSIGNATORY EMPLOYER's (based upon the allegations of paragraphs 7 to 13) payroll and business records which may be pertinent to determining whether DEFENDANTS have reported all hours worked (or paid for) by employees who perform services covered under the

436837.1

AGREEMENTS and has paid the appropriate MONTHLY CONTRIBUTIONS to the TRUST FUNDS, and that the DEFENDANTS shall be responsible for the costs of such audit.

## BREACH OF AGREEMENTS

25.    Plaintiff is informed and believes and based on such information and belief alleges that DEFENDANTS and each of them employed the same workers who performed services covered by the AGREEMENTS and failed to pay the rates specified in the AGREEMENTS to the TRUST FUNDS on behalf of those workers for each hour worked (or paid for) by employees performing services covered by the AGREEMENTS.  Due to EMPLOYER's and NONSIGNATORY EMPLOYER's (based upon the allegations of paragraphs 7 to 13) continuing obligation to submit MONTHLY REPORTS, additional amounts may be discovered and become due and owing by DEFENDANTS which cannot ascertained at this time.  Said amounts will be established by proof at the trial or other hearing.

26.    All conditions to EMPLOYER's and NONSIGNATORY EMPLOYER's (based upon the allegations of paragraphs 7 to13), obligations to make payments under the AGREEMENTS have been met.

## DAMAGES

27.    As a result of EMPLOYER's and NONSIGNATORY EMPLOYER's, (based upon the allegations of paragraph 7 to 13),  failure to pay the rates specified in the AGREEMENTS, Plaintiff is informed and believes and thereupon alleges that there is now owing and unpaid to certain TRUST FUNDS from DEFENDANTS, during the period from October 2017 to September 2018 and November 2020, January 2021 and November 2021, damages in the sum of at least  $442,396.19 consisting of $300,026.17 in unpaid MONTHLY CONTRIBUTIONS, $8,043.67 in subcontracting violations; $60,315.92 in liquidated damages, $3,200.00 in audit fees,  and $70,810.43  in interest on the late and/or unpaid MONTHLY CONTRIBUTIONS owed to the TRUST

436837.1

FUNDS through January 4, 2022, plus additional accrued interest at the plan rate(s), currently 5.25% per annum, until payment of the MONTHLY CONTRIBUTIONS, as well as any additional MONTHLY CONTRIBUTIONS, subcontracting violations, liquidated damages, audit fees and interest on the additional amounts owed at the plan rate(s) according to proof at the time of trial or other hearing. The audit amounts owed covering the period from October 2017 to September 30, 2018 were not discovered to be owed by DEFENDANTS until the audit of DEFENDANTS' records was completed for billing to EMPLOYER in June 2019.

28. The failure of the DEFENDANTS to pay MONTHLY CONTRIBUTIONS when due causes harm to the TRUST FUNDS and its participants, which is impractical to accurately quantify. This may include the cost of collecting the MONTHLY CONTRIBUTIONS from the DEFENDANTS or third parties (not including the costs of this litigation), the cost of special processing to restore benefit credits because of late MONTHLY CONTRIBUTIONS, the temporary loss of insurance coverage by employees (even if later restored) and medical harm to participants and beneficiaries who may have foregone medical care when notified that medical insurance ceased because of their employer's failure to pay MONTHLY CONTRIBUTIONS. The liquidated damages provision of the AGREEMENTS was meant to compensate for this unquantifiable loss, and is based on the ratio of collection costs over amounts collected, regularly reported to the Trustees. The Trustees of the TRUST FUNDS have the authority, in their discretion, to waive all or part of these liquidated damages. In this case, they have exercised their discretion by declining to waive any liquidated damages.

29. It has been necessary for the TRUST FUNDS to engage counsel to bring this action to compel compliance with the AGREEMENTS which provide that in the event litigation is necessary with respect to any of the fringe benefit MONTHLY CONTRIBUTIONS and/or damages against EMPLOYER and NONSIGNATORY EMPLOYER, (based upon the allegations of paragraph 7 to 13), then DEFENDANTS would pay reasonable attorney's fees and all other reasonable expenses of collection,

including audit fees.

30. Under Sections 515 and 502(g) of ERISA, EMPLOYER and NONSIGNATORY EMPLOYER, (based upon the allegations of paragraph 7 to 13), are liable to the TRUST FUNDS not only for the amount of delinquent MONTHLY CONTRIBUTIONS but also (a) for pre-judgment and post-judgment interest on the delinquent sums (as provided for in Section 502(g) of ERISA); (b) for the higher of interest or liquidated damages (as provided for in Section 502(g) of ERISA); (c) for attorneys' fees; and (d) for other relief permitted by Section 502(g) of ERISA.

## SECOND CLAIM FOR RELIEF
### (For Specific Performance of Obligation to Produce Records for Audit)

31. Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 30 above as if fully set forth here.

32. The TRUST FUNDS' audit covered the time period through September 2018 only, and a compliance audit is needed to determine if EMPLOYER and NONSIGNATORY EMPLOYER, (based upon the allegations of paragraph 7 to 13), have since then abided by the reporting and payment obligations of the AGREEMENTS; therefore a complete audit of DEFENDANTS' payroll and business records from October 2018 to date is needed in order to determine the full extent of any amounts due by DEFENDANTS to the TRUST FUNDS.

33. The TRUST FUNDS have no adequate or speedy remedy at law in that EMPLOYER and NONSIGNATORY EMPLOYER, (based upon the allegations of paragraph 7 to 13), have ignore their obligations to pay the contributions due on behalf of their employees to the TRUST FUNDS as disclosed by the audit findings thus far, and its most recent MONTHLY REPORT has been submitted without payment. The TRUST FUNDS can only determine the MONTHLY CONTRIBUTIONS due through

436837.1

an audit of DEFENDANT'S own payroll and business records and TRUST FUNDS have no other way to verify the amounts if any are owed by the DEFENDANTS.

34. Plaintiff requests that the Court exercise its authority under 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3) to order the EMPLOYER and NONSIGNATORY EMPLOYER, (based upon the allegations of paragraph 7 to 13), to comply with their obligations under the AGREEMENTS and ERISA to fully produce their books and records in order for Plaintiff to complete an audit to determine if additional amounts are due; and if such amounts are found due, Plaintiff will seek recovery of those amounts including MONTHLY CONTRIBUTIONS, liquidated damages, subcontracting violations, interest, audit fees according to proof at the time of trial and/or other hearing.

35. An award of attorneys' fees and costs is provided for by AGREEMENTS and under sections 502(g)(1) and/or (g)(2) of ERISA (29 U.S.C. § 1132(g)(1) and/or (g)(2)).

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

### FOR PLAINTIFF'S FIRST CLAIM FOR RELIEF

1. For the sum of $300,026.17, for delinquent fringe benefit MONTHLY CONTRIBUTIONS pursuant to the AGREEMENTS and 29 U.S.C. § 1132(g)(2)(A);

2. For $8,043.67 for the use of subcontractors not signatory to a collective bargaining agreement with the UNION, as required by the AGREEMENTS.

3. For liquidated damages in the sum of $60,315.92 as required by the AGREEMENTS and 29 U.S.C. § 1132(g)(2)(C);

4. Interest on the delinquent MONTHLY CONTRIBUTIONS and subcontracting violations in the amount of $70,810.43 through January, 2022, as required by the AGREEMENTS and pursuant to 29 U.S.C. § 1132(g)(2)(B), plus additional accrued interest at the plan rate(s);

436837.1

5. For Plaintiff's costs of audit in the sum of $3,200.00 in accordance with the AGREEMENTS and 29 U.S.C. § 1132(g)(2)(E);

6. For any additional amounts including MONTHLY CONTRIBUTIONS, liquidated damages, audit fees, fees/costs incurred by the TRUST FUNDS as a result of the submission of checks not honored by the bank upon which they were drawn, and amounts owed as a result work performed by any subcontractors of the EMPLOYER (or lower-tier subcontractors) determined to be due, plus interest at the plan rate(s) currently 5.25% pursuant to the AGREEMENTS and 29 U.S.C. §§ 1132(g)(2) and 1145, according to proof at the time of trial and/or other hearing.

7. For reasonable attorney fees and costs of suit as required by the AGREEMENTS and 29 U.S.C. § 1132(g)(2)(D);

8. For such other and further relief as the Court deems proper.

### **FOR PLAINTIFF'S SECOND CLAIM FOR RELIEF**

1. For the issuance of injunctive relief pursuant to the AGREEMENTS and 29 U.S.C. §§ 1132(g)(2)(E) and/or 1132(a)(3) ordering DEENDANTS and their managing officers, managing employees, agents and successors, as well as all those in active concert or participation with any one or more of them, to submit to an audit of the DEFENDANTS' records, to fully cooperate with Plaintiff with respect to the audit in order for Plaintiff to determine the total amount due to the TRUST FUNDS by DEFENDANTS and, specifically, to produce to Plaintiff the following payroll and business records – and any other records determined by Plaintiff to be necessary to conduct a full audit – for inspection, examination and copying covering the period from October 2018 to the date of the audit:

    1.1. DEFENDANTS' payroll and employee records, as well as any other records that might be relevant to a determination of the work performed by the DEFENDANTS, its employees, its subcontractors, its lower-tier subcontractors and the employees DEFENDANTS'

-13-

subcontractors and lower-tier subcontractors, including but not limited to payroll journals, employee earnings records, certified payroll records, payroll check books and stubs, cancelled payroll checks, payroll time cards and state and federal tax returns (and all other state and federal tax records), as well as labor distribution journals and any other records that might be relevant to an identification of the employees who performed work for DEFENDANTS, their subcontractors or lower-tier subcontractors, or which might be relevant to a determination of the projects on which DEFENDANTS, its employees, its subcontractors, lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work, including any records that provide the names, addresses, Social Security numbers, job classification or the number of hours worked by any one or more employee;

1.2. DEFENDANTS' job files for each contract, project or job on which the DEFENDANTS, and its employees, subcontractors, lower-tier subcontractors or the employees of their subcontractors or lower-tier subcontractors worked, including but not limited to all correspondence, agreements and contracts between DEFENDANTS and any general contractor, subcontractor, owner, builder or developer, as well as all field records, job records, notices, project logs, supervisors' diaries and notes, employees' diaries and notes, memoranda, releases and any other records that relate to the supervision of DEFENDANTS' employees, DEFENDANTS' subcontractors, or lower-tier subcontractors or the employees of its subcontractors and lower-tier subcontractors, or the projects on which DEFENDANTS' employees, subcontractors, lower-tier subcontractors or the employees of their subcontractors or lower-tier

436837.1

subcontractors performed work;

1.3. DEFENDANTS' records related to cash receipts, including but not limited cash receipts journals, accounts receivable journals, accounts receivable subsidiary ledgers and billing invoices for all contracts, projects and jobs on which EMPLOYER'S employees, subcontractors, lower-tier subcontractors or the employees of their subcontractors or lower-tier subcontractors performed work;

1.4. DEFENDANTS' bank statements, including but not limited to those for all checking, savings and investment accounts and check registers for the checking accounts;

1.5. DEFENDANTS' records related to disbursements, including but not limited to vendors' invoices, cash disbursement journals, accounts payable journals, check registers and all other records which indicate disbursements;

1.6. All collective bargaining agreements between DEFENDANTS and any trade union, and all records of contributions by the DEFENDANTS to any trade union trust fund; and

1.7. All documents, records, other writings, including contracts, agreements, invoices, pertaining to transfers of work, employees, equipment, contracts, subcontracts between DEFENDANTS, and/or documentation relating to the use of DEFENDANTS' employees, equipment, contracts, subcontracts to perform each others work.

1.8. All documents, records, other writings, certificates of titles relating to the ownership of equipment, and vehicles used by DEFENDANTS' and/or provided in performance of DEFENDANTS' work on projects.

2. For reasonable attorneys' fees and costs of suit, as required by the Agreements and provided for under 29 U.S.C. § 1132(g)(1) and/or (g)(2).

436837.1

3. For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132 (a)(3).

Respectfully Submitted,

DATED: January 22, 2022

ALEXANDER B. CVITAN, MARSHA M. HAMASAKI, and PETER A. HUTCHINSON of REICH, ADELL & CVITAN
A Professional Law Corporation

By: /s/ Marsha M. Hamasaki
MARSHA M. HAMASAKI
Attorneys for Plaintiff

-16-

436837.1